Good morning, Your Honors. Owen Prasovitz on behalf of Appellant Italflavors, LLC. I'd like to reserve three minutes of rebuttal time. May it please the Court. The central issue for this Court to decide is whether or not the Italflavors parties and the Caffe Vergnano parties entered into an enforceable arbitration agreement when they simultaneously executed two documents on the same day. The first document contained an arbitration clause. The second document contained language that unequivocally... Would your case be different if it weren't the same day? If it weren't the same day, our contention is that it was the same transaction. So there is California case law that says... I understand. I understand your contention. I am now positing a different situation. Would your case be different if they had done it on the next day? They had gotten together, signed this agreement, and then the next day they had gone, gotten together and signed the second agreement, the one that says the first one is now on void. No, Your Honor. It would not be different because in that situation, that's... Your argument that this has to do not with the scope of arbitration, but whether or not there was an arbitration agreement at all. Yes, it's a formation question. Absolutely not a termination. We're not dealing with a termination. So you're just sort of fuzzing it up by saying it was the same day. It has a certain appeal. Yes, Your Honor. But as a legal matter, it doesn't matter. It doesn't matter because it's the same transaction, so it's the same agreement. And they had gone and sort of the next day torn up the first contract and say... Yes, it could have lasted weeks going back and forth on an agreement. Next day, next month, next year, whatever. And your position would be the question of whether there was still a contract in force which authorized the arbitrator to do anything at all is a question of law for us to decide. Yes, it is. That's your case, right? It's a formation question. Absolutely. And there's a few ways to look at it. I think the threshold question is which law are we going to use to determine whether or not the contract was formed. I think appellees and appellants... Ninth Circuit law, maybe? Yes, but in terms of... So federal courts apply the federal common law which looks at the second restatement. And we disagree as to the application of the second restatement, but I think we... So the shade of Swift v. Tyson, huh? Essentially what we... You remember Swift v. Tyson from law school? I don't recall it, Your Honor.  Oh, okay. Yes. All right. I remember it from law school 40 years ago. But the difference here is we're dealing with federal subject matter jurisdiction and we're not in a diversity case, so... No, no, no. I... No, I follow. I understand. That's the world, the federal common law world. I remember now, Your Honor. Thank you. There we go. Can I ask you what in the Second Agreement undermines the First Agreement? Well, the language of the Second Agreement. That the September 23rd Agreement does not have any validity or effectiveness between the parties. That this contract does not... That the September 23rd Agreement does not produce any effect between the parties who, as agreed, will sign a future contract. It expressly disavows any validity or effect between the two parties. It can be looked at as an amendment to the First Agreement or it can be looked at as a single transaction. Under California law, which... But why are you arguing California law? I mean, it was negotiated in Italy, this as an agreement, whatever it is, was negotiated in Italy between an Italian corporation and a Delaware corporation. Why should the agreement be interpreted according to California law? What's your best case supporting that? To answer your question, first of all, it was not negotiated in Italy. The Italian Flavorist Parties in the United States were in California during the scope of this negotiation. They went to Italy, though. It was executed in Italy, in Turin, Italy, on a single day, September 23rd. I think we look at the restatement law. We would conduct that we apply Section 188 where there's no choice of law provision. The elements of that, you look at the... But what's your best case to say California law should be used here? I can't find it. As far as case law, there's very little case law in international arbitration disputes where they discuss choice of law issues. There's cases that say this is an unexplored area. I think the best way to look at it is to just analyze the elements of Section 188 or even Section 187 of the restatement. If we look at Section 188, you look at the place of contracting. Yes, it was in Italy, but the place of negotiations in the contract evenly divided between Italy and California. The place of performance almost entirely in California. This is a coffee shop in San Diego. Kathy Vignano or Nono or whatever, it asserts in its brief that it was Hector and Caesar who wanted an arbitration clause included in the September 23rd, 2010 agreement. Well, that's simply not true. The September 23rd agreement was a boilerplate agreement sent from Kathy Vignano to the Italian service parties. There were drafts exchanged. It was an operative ongoing draft of an agreement. But that agreement was never going to be the binding final agreement between the parties. And that was at the express request of Kathy Vignano whose lawyers informed them that that agreement was not going to comply with California franchise law. And ultimately, that's the question I want to get to is the reason California law should apply is the policy of California is to protect its franchisees as expressed in the CFIL. But by all of your arguments after if there was a termination and then so what document or documents did the parties refer to as defining their rights and obligations? If you look at the September 24th agreement, there's a series of commercial points. It discusses the series of payments and what the future franchise agreement would entail. That is the operative agreement. But it never happened. But the commercial points are the agreement. The commercial points are the operative agreement. So if that agreement's in effect, doesn't that agreement have an arbitration clause? It does not because we're talking about the September 24th agreement and the September 23rd. The September 23rd agreement has the arbitration clause. It also allows for written amendments under Section 15.2. But the September 24th agreement can either be looked at as an amendment that overrides all of the provisions of the September 23rd agreement. And the September 24th agreement does not have an arbitration clause. Instead, it has a series of commercial points. And those commercial points are the basis for the franchise dispute among the parties. But the 24th agreement said in regard to the future contract, the parties here would agree on the commercial points indicated in the separate document denominated commercial points of the franchising contract to be signed in the near future, which is signed at the same time as this document. Isn't that essentially assuming that the early agreement is going to be incorporated? That's not how I read the language. What that is referring to is a future agreement, a future franchise agreement, that would be created among the parties down the road. And that agreement was going to be dictated by the commercial points on the second page of that September 24th agreement with the commercial points and the series of payments and how the parties would operate together. That was the operative agreement. The language of disavowing all of the terms of the September 23rd agreement is incontestable. I mean, it does not have any validity or effectiveness between the parties. And whether we look at California law or we look at any law that looks at the intent of the parties and the Granite Rock decision, for example, when you're looking at formation issues, the intent of the parties is what's prevailing. If you look at these two documents together as a single transaction, it is impossible to see how the September 23rd agreement was the intended contract between the two parties. I think one of the points that Apelli is going to address is that this question, and this is what the district court relied on, it said, okay, assuming the September 23rd agreement was terminated by the September 24th agreement, that question of termination will go to the arbitrator to decide. And this is essentially what the Ninth Circuit decided in McKinney, that questions of formation are for the court and questions of termination go to the arbitrator. However, we don't fall under the McKinney decision. First, because this is the same transaction. We're not saying that the second agreement. So who determines whether there's a contract? This court, the Court of Appeal. And the district court. And the district court, yes. Okay. The question of formation is entirely within your purview. There are supposed to be cases that say that whether it was terminated or not is left to the arbitrator. And the district court decided that there was an arbitration clause and said that the arbitrator can determine whether it was terminated, right? Yes, but the district court was incorrect, and we're looking on a de novo review. The district court erred, not that we need to show that it was clearly erroneous, but it was erroneous because it was the district court did not contemplate this as a single agreement. They looked at it as two separate agreements. This is the same transaction. They were signed on the same day. When you look at these. So it seems to be a shooting yourself in the foot. If it's the same transaction, then you've got an arbitration clause. If it's the same agreement, you've got an agreement with an arbitration clause. You're much better off saying it was two separate agreements. One of them had an arbitration clause, and then it was terminated. And the termination is something we can decide, but if you're looking within the scope of the agreement, then you've got camping construction and Brotherhood of Steamsters and all those cases saying if the termination happens within the contract, then that's a matter for the arbitrator. So, yeah, I think you're shooting yourself in the foot here. We can look at it two ways. If we're going to say that it was a termination, if we're looking at it as a termination question. If you have a contract and it has an arbitration clause and the contract says it will terminate upon certain acts of default, who decides whether or not there is a default? That's an expiration question, and that would go to an arbitrator. No question. However, where – and we can go to the – Well, the more you push these two transactions together and make them one agreement, the more it looks to me like an expiration question. It's a very short expiration time, but you're not talking about how long. You're not saying that we had an agreement and it was only in effect for a nanosecond, and we had this other part of the agreement, which is also part of the same deal, that says it terminates immediately. That sounds to me a lot more like a scope question than a – I follow your Honor's thinking there. I think a helpful case to that effect would be the Nold brothers' decision, where that case discussed post-termination disputes. We would argue that the fundamental right that we're discussing under the underlying CFIL claim, it derived from post-termination issues, and the Nold brothers' case shows that post-termination disputes, that for a right that derives from a post-termination of the agreement, is not a question for the arbitrator to decide. If the operative agreement on September 24th was the agreement that did not contain an arbitration question, and that's what the parties were operating under, then any question as to the Café Vignano's – The problem is you tell us that the second agreement was not a freestanding agreement. It was all part of the same deal, and the problem is your same deal has an arbitration clause. If you really view this as two parts of the same agreement, then you've essentially conceded the issue. I don't think we have. I think one of the questions that we haven't addressed here, and I still want to reserve time for rebuttal, is the question of intent. If we're treating this as the same transaction, and you read the language of the September 24th agreement, you cannot look at that language and believe that any single term in that September 23rd agreement has any effect between the parties, and that includes the arbitration clause, thereby meaning that the parties never intended to enter into an arbitration agreement. The big picture here is that Café Vignano did not want to enter into this September 23rd agreement. None of the parties wanted to. They just wanted to cheat the United States government. They wanted to commit immigration fraud. That's what they were wanting to do, and they wanted to sort of help you out here. We don't... Without getting into that question as to whether or not... I think you should get into that question. You're the one who wanted to get there, so I think you'd better talk about it now. This was an immigration fraud, right? I don't think so, because if... They were trying to set up a sham agreement that according to you meant nothing in order to present it to the immigration authorities so that somebody could get a visa. I mean, it's not like we don't see cases like that all the time. Remember, we have a big immigration docket. Stuff like that happens all the time. That does happen. Your Honor, whether or not there was a violation of immigration law, that's not before the court here. That's not the question on appeal. It's before the court if we say it's before the court. I mean, should we be helping you out to commit immigration fraud? You know, it's a good policy question. There was an agreement between the parties. Well, I know. You know how many cases I've seen where people have agreed to pretend they're married so they could present a marriage license to the immigration authorities? You think that's news? The parties agreed together to cheat the U.S. government? You think that never happens? I think had they submitted the September 24th agreement, which was an operative agreement, it would have satisfied the immigration concerns. But I think the parties inartfully tried to do that by submitting a document that did not... So they not only tried to commit immigration fraud, they did a bad job of it. Why are we here from opposing counsel? Thank you, Your Honor. Good morning, Your Honors. Good morning. May it please the Court, Calvin Davis of Gordon & Reese for Appellees, Caffe Vergnano. At its base, Your Honors, stripping away the excess here, what this appeal is really about is an effort on the part of appellants to bring before this court the same facts they previously argued strenuously in front of the district court. The court considered those facts, it considered the facts that we presented to the district court, and decided... You think that's unusual? I mean, we have a rule that you can't really argue new matters of appeal. So what you have just said says they are making a proper appeal. You know, if they were arguing something totally new, you'd be standing there saying, You know, Your Honor, you shouldn't hear this because I'm arguing something they didn't argue in front of the district court. So you want to have it both ways, right? No, Your Honor. So why have you wasted a minute of your time telling us this? The reason I... The question here is, does this fall under granite rock or does this fall under camping construction? That's the legal question before us. Okay. Your Honor, the point I was trying to make, Your Honor, is that given the fact that the court below made a factual determination about the formation of the contract, the standard before the court today is clear error. Did the court below make a clear error in determining between the facts? Why isn't it the question whether the court made an error of law in saying that in failing to find this was a terminated agreement, which is a question for the... Under granite rock, it's a question for, not scope, but existence of agreement, and that's a question that is for the district court. Why didn't this court commit an error by failing to resolve the question of whether the agreement was terminated? I'm not even going to say whether it is terminated or not, but in failing to make that determination. Because the threshold question for the court to decide below was, was a contract formed that contained an arbitration clause? That was the first question before they get to terminated, concluded, validity, other issues. That would be a secondary issue. Okay. So the court said there was. Right. So the court says, I've looked at this, I've reviewed the declarations, I've reviewed all the exhibits that were submitted to me, and I've decided this contract was formed for some period of time, and it contains a valid arbitration clause. At that point, because the arbitration clause was extremely broad and extended to validity of the arbitration clause, termination, excuse me, validity of the clause... Are you reciting to me what the district court did? You think I don't know what the district court did? The question is, why didn't the district court err in failing to see, to decide whether or not this agreement, whatever it was, no matter how broad the scope, was in fact terminated? You will agree that you can have an arbitration agreement that is later terminated and no longer in existence. And at that point, there's nothing to arbitrate. I mean, Supreme Court has said that. That's granite rock. Yes, Your Honor. You agree to that? I agree. So the question is, why didn't the district court err by failing to decide whether or not this agreement, which contained all that good stuff that you want to talk about, which doesn't matter, is over? Because the parties have terminated it. And because that's a question that the district court makes and not the arbitrator. The district court, my answer to your question, Your Honor, is the district court considered all the facts submitted to it, including the fact that the parties, after the contract was formed... Did the district court decide the question of whether the contract was terminated? No, because the court... Okay, why did the district court not err? That's my question. Why did the district court not err by failing to decide whether the contract was terminated? It's not a clear error by the district court, Your Honor, because that... Clear error is a factual determination. I'm talking about error of law. The question is, why did not the district court err as a matter of law by deciding whether the contract, which contains an arbitration clause, was terminated? That's the question for you. Thank you, Your Honor. The answer to the question is that the breadth of the arbitration clause here includes validity and termination. It can't... You think there are contracts that are non-terminable, the contracts that cannot be terminated by subsequent events, so that the parties can get together afterwards and say, that contract that we had is terminated? You think there are such contracts that they sort of live on forever? Well, the contract lives on until it is terminated, yes, Your Honor. And in this case, the contract was performed under for a year. The parties here, the child laborers' parties, opened a coffee shop. No, but their position is, we had a contract for a while, and then we terminated it. Okay? What number? You know, it's a very broad contract. There are all sorts of arbitration on that. And we want the district court to decide whether or not there in fact was a termination of that very broad contract. And you need to explain to me if you want my vote on this, why the district court did not err by failing to make that decision. And I point specifically to the Supreme Court's opinion in Granite Rock. Are you familiar with Granite Rock? I'm familiar with it, Your Honor. I'm sorry? I'm familiar with it, yes, Your Honor. This is where a party contests either or both matters. I'm sorry, the court should order arbitration dispute only where the court is satisfied that neither the formation of the parties arbitration agreement nor its enforceability or applicability of the dispute is an issue. Where a party contests either or both matters, the court must resolve the disagreement. End of quote. Supreme Court of the United States. Okay? So why isn't this a situation where they dispute whether the contract still exists? Not the scope, but it still exists. And why isn't that something that Granite Rock says the district court has to decide? Right. Okay, I have two answers, Your Honor. First of all... No, give me your best answer. Give me your best answer. When lawyers tell me I've got two answers, it means like I haven't got a very good answer. I'm going to try to piece together. So give me your best answer. I don't believe the district court failed to consider that issue, Your Honor. You already conceded the district court did not decide whether the contract was terminated. You've said that. Do you want to take that back? Yeah, I'll take that back, Your Honor. I think I misunderstood the Your Honor's question. Oh, okay. So let's look at... So where did the district court decide there was no termination? The district court decided that... No, no. Give me... Let's look at the district court's order. Don't extemporize. I have the district court's order in front of me, and you point to me where the district court decides that question. On the last page of the district court's opinion, this is excerpt of Record 8, Your Honor. Okay, I'm getting there. I'm getting there. Not as fast as lightning, but I am there. Okay. I have a page. I have a page with numbers on the left-hand side. You give me a number. Right. It starts at line 10, Your Honor. Line 10. It says, quote, This court is convinced that the issue of whether the broad arbitration clause contained in the commercial contract survives after September 24, 2010 agreement took effect, should be submitted to the arbitrator. Okay. And it goes on... So you remember my question? Right. Do you remember my question? Yes, Your Honor. What was my question? Your question was whether or not the district court decided the termination issue. My question was where. Well, I asked whether, and you said no, and then you changed your mind. You said, yes, the district court did decide it, and then I asked where, and you said right here. And you pointed me to a line where the district court specifically disavows making that decision, specifically says that's something that is going to be for the arbitrator. So my question once again is, why isn't this exactly what the situation that Granith Rock contemplated, and why didn't the district court err as a matter of law by failing to do what Granith Rock says? Because what the district court is doing here, Your Honor, is by looking at the arbitration clause and the breadth of the arbitration clause. I'm not specifically familiar, honestly, with the arbitration clause in the case your court is signing, that the court is signing, but the arbitration clause here specifically delegates to the arbitrator whether the termination or validity thereof. So what? So what? It can be, even a very broad case, a contract with a very broad arbitration clause can be terminated. The parties can get together and say it's over, right? Correct. And why is that not exactly the kind of thing that Granith Rock contemplates must be decided by the court? I think it depends on the arbitration clause, Your Honor. I think if you have a relatively narrow arbitration clause that doesn't talk about validity and termination, then perhaps that's for the court to determine, or it might be for the court to determine. In a situation like this... Is that your best answer? In a situation like this... Is that your best answer? Well, if I could conclude my best answer, it will be my best answer, yes, Your Honor. My best answer is... You've gone back to the breadth of the arbitration clause, but you've already conceded that even a very broad... a contract with a very broad arbitration clause can then be terminated by subsequent action of the parties. Correct, Your Honor, but whether it has been terminated should be up to the arbitrator, because that's been delegated to the arbitrator by the parties. Okay, what in Granith Rock says that? Take a look. Do you have Granith Rock? I don't have it with me, Your Honor. I'm sorry. No? You came to court? Well, opposing counsel has a copy. He's going to give it to you. Let's look at Granith Rock together and see what... You know, we don't want to be reversed here by the Supreme Court, you know. There are few things that matter to us more here in the Ninth Circuit than not being reversed. That's why Judge Corman comes to sit with us. I mean, I've looked at Granith Rock. To me, it seems to say, well, you know, if you're claiming the contract is over, that's something that the court must decide. Now, maybe you stood well under that. Well, I don't think you're going to find in the next three minutes and 37 seconds, so maybe we should... You can file a 28-J letter if you haven't answered that question. Fine. We're happy to file something supplemental if that will assist the court. But the answer is... It's really assisting your client they should worry about. That's fine, Your Honor. I'll be happy to do that. Okay. So basically, the issue as presented to the court is, we believe it's a factual issue. We believe it's a clear error for review. Let's say we disagree with you that it's a factual issue. Do you lose? No, Your Honor. Still, the court could look at the decision, decide it on its own merits de novo, and determine that the contract was formed and governs the dispute here. So I don't know that the fact that the clear error standard wouldn't be... I see. We make the decision. Right. You would make the decision and you could still agree with the district court, obviously. Why don't you explain to us how we reach that decision? So the basic issue here is mutual assent of the parties. Do the parties agree to this contract? Or as appellants argue, is there some immediate rescission or termination of the commercial contract? You determine mutual assent by a lot of factors, but you look around at all the factors that happened here, such as the commercial contract, which we claim is the contract here, was negotiated for over five months. The parties went back and forth talking about terms, and indeed, as was pointed out by the court, it was appellants here who actually suggested that an arbitration clause be put into the contract. After that contract was signed, the parties operated under the contract. Appellants went back to San Diego. They opened a Cafe Varniano coffeehouse. They ordered furniture from us under the commercial contract. They ordered coffee from us under the commercial contract. They ordered equipment from us under the commercial contract. And actually put us under those terms. When you say under the contract? Under the commercial contract, the contract that was signed first. You're on the September 23rd contract. I mean, how do we know they're under the commercial? I mean, why didn't they just order it without the contract? Because the contract contains terms that they were following in opening up the coffee shop. For example, they opened up a coffee shop in San Diego called Cafe Varniano. Well, their license to utilize the trade name Cafe Varniano is in the commercial contract. Otherwise, they're doing it without authorization. They are purchasing furniture, coffee, and equipment. Well, you have oral authorization. The second agreement says that the above-mentioned contract, that is the first one, does not have any validity or effectiveness between the parties. Correct. They could be doing it pursuant to an oral understanding. Well, you look at all the facts, Your Honor, and you certainly draw a conclusion as to which one of these contracts is actually the contract the parties operated under. The fact of the matter is the second contract contains virtually no terms. But the point is none of the stuff that happened afterwards makes a specific reference to the contract. They just did stuff. They bought stuff. Your client sold them stuff. Your client knew they were using the name, didn't object, but didn't say there was nothing. There were no invoices saying pursuant to this contract. Well, there were e-mails back and forth, Your Honor, subsequent to the signatures on the commercial contract referencing the earlier contract, referencing the ultimate termination of that contract. The parties on behalf of Natal Flavors were upset later. The documents that were given to them were inconsistent with the September 23rd contract they'd signed earlier. So really the totality of all the evidence here, if the court wants to make its own factual determination, was that the contract was formed, and the contract that was formed was the commercial contract. Why wouldn't it be wiser to send it back to the district court to do that? It sounds awfully fact-messy. Well, it sounds like the district court already made that determination, Your Honor. But I do agree there's a lot of facts here the court had to consider, but I think it already considered and already made its determination that the contract was in fact formed. But if you consider all the totality of the facts here, Your Honor, from the time that contract was signed until it was terminated, its terms were complied with by both parties. I think it's very hard to argue, as appellants try to, that in fact that contract never existed and was immediately revoked by the second contract. That doesn't seem to comport with the facts here, Your Honor. Thank you. Did you have any time left? Would you like to take a minute for rebuttal? About just a minute. Your Honor, two questions. Yes, Granite Rock does govern this dispute. This court can resolve this question as to whether or not the September 23rd was fully terminated by the terms of the September 24th agreement. Do you want us to make that decision? This court can make that decision. I think this court can take multiple avenues to get there, but I think ultimately this court can follow Granite Rock and say that the mutual intent of the parties was that there should be no... Well, what about all those actions that happened afterwards, where they seemed to live under their... It's irrelevant, because there were oral representations made by both parties as to how the contract would play out, and Café Vignano never followed through on some of them, and they did follow through on others, but the parties never expressed any intent or there was no indication that they were operating under that September 23rd agreement. Maybe the second agreement was the sham, not the first one. When you start dealing with shams, who knows who's lying? Well, what's a lie? It sounds like the whole thing was a big lie. Well, there was an agreement between the parties, whether it was oral or whether it was operating under the September 24th agreement. The language of the September 24th agreement makes clear that the September 23rd terms have no validity. I think your clients got together and said, let's make a very good law school exam question, contract exam question. Can I ask you one practical question? What is your real problem here? Is it the arbitration or Italian law? You mean on appeal? What's our real problem? No, as a practical matter. If I was sitting in the district court and I was listening to this, I would say, well, what's your real problem? Is there some way to mediate it? Is it arbitration or is it the choice of law? Or the place where the arbitration would take place? What bothers your client? I think the number one problem is going to Switzerland to arbitrate this dispute and to interpret California franchise law under a choice of law provision that says Italian law decided by a Swiss arbitrator. And you don't think that, if the problem is not arbitration, but those two subsidiary issues, is it something that you think could be mediated, subject to be mediated between the parties instead of spending all this money going back and forth when in the end you both get the arbitration and it's only a question of, I don't even know what, most people put choice of law clauses in and they say Italian law and they don't even know what Italian law is and they don't even know how it affects it because they don't know what dispute is going to arise. Your Honor, the problem is Cafe Vignano has had no incentive to mediate any of this because they're just saying arbitration in Switzerland, arbitration in Switzerland, we're not doing anything else. Does California allow you to have an oral franchise? That's one of the problems with the CFIL claim. I mean, that's one of the reasons we brought the CFIL claim. You can't have an oral agreement even if it violates franchise law and that's one of the claims that we're making is that they violated California franchise law. But yes, you can start that CFIL claim based off an oral agreement. Would you be interested in mediating? If Cafe Vignano would come to the table with mediating, that is something that we would be open to doing. Would you be interested in mediating? Well, we have mediators. Very helpful. Why don't we do this? Why don't we defer submission on this case for a week and during that week the parties can get together and maybe contact our mediation office. And if we don't hear from the mediation office within a week that it is under mediation, we will submit the case and decide. So if we have a date set within the next week, we can prolong it? You just talk to the mediators and the mediators will let us know. They will notify us and then we can extend the deferral. But if we don't hear from them in a week, we will submit it and decide. Okay. How's that? Thank you so much. Thank you. The case is submitted.
judges: Korman, Kozinski, Callahan